**Electronically Filed
Supreme Court
SCWC-18-0000141
05-JAN-2021
10:11 AM
Dkt. 13 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

_____

EDWARD G. STANLEY, Petitioner/Petitioner-Appellant,

vs.

STATE OF HAWAI'I, Respondent/Respondent-Appellee.

_____

SCWC-18-0000141

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-18-0000141; S.P.P. NO. 17-1-0007; (CR. NO. 1PC880000418))

JANUARY 5, 2021

RECKTENWALD, C.J., NAKAYAMA, McKENNA, AND WILSON, JJ.,
AND CIRCUIT JUDGE MORIKAWA, IN PLACE OF POLLACK, J., RECUSED

OPINION OF THE COURT BY McKENNA, J.

## I.  Introduction

Edward G. Stanley ("Stanley"), pro se, appeals the Circuit Court of the First Circuit's ("circuit court")[1] denial of his second Hawai'i Rules of Penal Procedure ("HRPP") Rule 40 petition for post-conviction relief ("Second Petition").

_____

[1]    The Honorable Paul B.K. Wong presided over the Second Petition at issue in this certiorari proceeding.

Stanley's Second Petition arises from a March 16, 1988 conviction.  A jury convicted Stanley of two counts of first degree reckless endangering, as lesser included offenses of attempted first degree murder (Counts I and II); one count of attempted first degree murder (Count III); one count of attempted manslaughter, as a lesser included offense of attempted second degree murder (Count V); and one count of place to keep firearm (Count VI).[2]  On September 23, 1988, the trial court sentenced Stanley to five-year terms of imprisonment for Counts I and II, life without the possibility of parole for Count III, ten years with a mandatory minimum of five years for Count V, and five years for Count VI.  All sentences were to be served concurrently.

In 1989, Stanley's direct appeal from his 1988 convictions was rejected by this court in a brief memorandum opinion.  His first HRPP Rule 40 petition ("First Petition") in 1992, alleging different grounds than those contained in this Second Petition, was rejected by this court in a 1994 published opinion.  His 2001 HRPP Rule 35 motion was also denied by the circuit court, from which he did not appeal.

Thereafter, Stanley filed the subject Second Petition in 2017, in which he alleged, in relevant part, that his conviction of attempted manslaughter in Count V was based on reckless

---

[2]     Regarding Count IV, see <u>infra</u> text accompanying and footnote 8.

conduct, and therefore, his sentence was illegal, citing to State v. Pinero, 70 Haw. 509, 778 P.2d 704 (1989), State v. Holbron, 80 Hawai‘i 27, 904 P.2d 912 (1995), reconsideration denied, 80 Hawai‘i 187, 907 P.2d 773 (1995), and State v. Loa, 83 Hawai‘i 335, 926 P.2d 1258 (1996), which held that because the only non-exculpatory circumstance legally capable of mitigating murder to manslaughter is the mitigation of extreme mental or emotional disturbance for which there is a reasonable explanation ("EMED"), there is no offense of attempted involuntary manslaughter based on reckless conduct ("attempted reckless manslaughter").

The circuit court denied Stanley's Second Petition without an evidentiary hearing.  Stanley appealed the denial of the Second Petition to the Intermediate Court of Appeals ("ICA").

In its summary disposition order ("SDO"), the ICA affirmed the circuit court's denial of the Second Petition.  See Stanley v. State, CAAP-18-0000141, 2019 WL 3976129 (App. Aug. 22, 2019) (SDO).  The ICA ruled, inter alia, that Stanley failed to demonstrate he was convicted of attempted reckless manslaughter, thereby failing to state a colorable claim that his sentence for Count V was illegal.  The ICA also ruled Stanley was not entitled to relief under HRPP Rule 40 based on the equal protection claim alleged on appeal because he had not raised the issue before the circuit court in the Second Petition and failed

3

to prove the existence of extraordinary circumstances justifying his failure to raise that claim.

We hold the ICA erred in affirming the circuit court's ruling that Stanley failed to state a colorable claim that he was convicted of attempted reckless manslaughter in his Second Petition. This error requires vacatur of his attempted manslaughter conviction in Count V. On remand, double jeopardy principles bar the State from retrying Stanley for attempted second degree murder in Count V.

Accordingly, we vacate the ICA's October 2, 2019 judgment on appeal entered pursuant to its August 22, 2019 SDO, Stanley's 1988 conviction for attempted manslaughter in Count V, and the circuit court's February 23, 2018 order denying Stanley's Second Petition, and we remand this case to the circuit court for further proceedings consistent with this opinion.

## II.  Background

### A.  Factual background

This case arose from a March 11, 1988 incident in which Stanley fired gunshots in the vicinity of several individuals, including two police officers, at different intervals, and had also pointed, but not fired, a gun at another police officer. State v. Stanley, No. 13402, at 1-2 (Haw. Dec. 14, 1989) (mem.) ("Stanley I").

On March 16, 1988, a grand jury indicted Stanley with three counts of attempted first degree murder in violation of Hawai'i Revised Statutes ("HRS") §§ 705-500 (1985),[3] 707-701(1)(b) (Supp. 1988),[4] and 706-656 (Supp. 1988)[5] (Counts I, II, and III); one

---

[3]    HRS § 705-500 (1985) states:

> **§705-500 Criminal attempt.**  (1) A person is guilty of an attempt to commit a crime if he:
>
>> (a)    Intentionally engages in conduct which would constitute the crime if the attendant circumstances were as he believes them to be; or
>>
>> (b)    Intentionally engages in conduct which, under the circumstances as he believes them to be, constitutes a substantial step in a course of conduct intended to culminate in his commission of the crime.
>
> (2)    When causing a particular result is an element of the crime, a person is guilty of an attempt to commit the crime if, acting with the state of mind required to establish liability with respect to the attendant circumstances specified in the definition of the crime, he intentionally engages in conduct which is a substantial step in a course of conduct intended or known to cause such a result.
>
> (3)    Conduct shall not be considered a substantial step under this section unless it is strongly corroborative of the defendant's criminal intent.

[4]    HRS § 707-701(1)(b) (Supp. 1988) states:

> (1) A person commits the offense of murder in the first degree if the person intentionally or knowingly causes the death of:
>
> . . . .
>
> (b) A peace officer, judge, or prosecutor arising out of the performance of official duties[.]

[5]    HRS § 706-656 (Supp. 1988) states:

> **§706-656 Terms of imprisonment for first and second degree murder and attempted first and second degree murder.**  (1) Persons convicted of first degree murder or first degree
>
> (continued . . .)

5

count of attempted first degree murder in violation of

HRS §§ 705-500, 707-701(1)(a),[6] and 706-656 (Count IV); one count

of attempted second degree murder in violation of

HRS §§ 705-500, 707-701.5(1) (Supp. 1988), and 706-656 (Count

V); and one count of place to keep firearm in violation of

HRS § 134-6 (1985) (Count VI).[7]

The jury trial began on August 8, 1988.  On August 16,

1988, the trial court acquitted Stanley of attempted first

degree murder in Count IV.[8]  After the close of the parties'

---

(. . . continued)
    attempted murder shall be sentenced to life imprisonment
    without possibility of parole.

        As part of such sentence the court shall order the
    director of the department of corrections and the Hawaii
    paroling authority to prepare an application for the
    governor to commute the sentence to life imprisonment with
    parole at the end of twenty years of imprisonment; provided
    that persons who are repeat offenders under section 706-
    606.5 shall serve at least the applicable mandatory minimum
    term of imprisonment.

            . . . .

[6]    HRS § 707-701(1)(a) (Supp. 1988) states:

    (1) A person commits the offense of murder in the first
    degree if the person intentionally or knowingly causes the
    death of:

        (a) More than one person in the same or separate
        incident[.]

[7]    Each count of attempted murder involved a different complaining
witness.

[8]    Although Stanley had stated the trial court acquitted him of attempted
first degree murder in Count IV for insufficient evidence, the record
indicates the trial court acquitted Stanley of Count IV because it involved
the same police officers in Counts I and III.

arguments, the trial court read, and provided to the jury in writing for its deliberations, as follows:

> If you are unable to find that the offense of attempted murder in the first degree or second degree has been proven beyond a reasonable doubt, you may then consider whether the defendant is guilty or not guilty of the included offense of attempted manslaughter.
>
> In a prosecution for attempted murder in the first degree or second degree, attempted manslaughter is an included offense.  The offense of attempted manslaughter is committed if the defendant attempted to recklessly cause the death of another person.
>
> In a prosecution for attempted murder in the first degree or second degree, it is also a defense, which reduces the offense to attempted manslaughter, that the defendant was, at the time he attempted to cause the death of another person, under the influence of extreme mental or emotional disturbance for which there is a reasonable explanation.  The reasonable-ness of the explanation shall be determined from the viewpoint of a person in the defendant's situation under the circumstances as he believed them to be.
>
> The burden is upon the State to prove beyond a reasonable doubt that the defendant was not acting under the influence of extreme mental or emotional disturbance for which there is a reasonable explanation.  If the State has not done so, you must find the defendant guilty of the included offense of attempted manslaughter.  If the State has done so, you must find the defendant guilty of the offense of attempted murder in the first degree or second degree.
>
> If you cannot agree that the prosecution has proven all of the elements of the offenses of attempted murder in the first degree or second degree or attempted manslaughter beyond a reasonable doubt, you may consider the included offense of reckless endangering in the first degree.
>
> A person commits the offense of reckless endangering in the first degree if he intentionally fires a firearm in a manner which places another person in danger of death or serious bodily injury.
>
> . . . .
>
> As to each count, you may bring in either one of the following verdicts:
>
> . . . .
>
> As to Count III, attempted murder in the first degree:
> 1.    Not guilty; or
> 2.    Guilty as charged; or
> 3.    Guilty of the included offense of attempted manslaughter; or

> 4.    Guilty of the included offense of
> reckless endangering in the first degree.
>
> As to Count V, attempted murder in the second degree:
> 1.    Not guilty; or
> 2.    Guilty as charged; or
> 3.    Guilty of the included offense of
> attempted manslaughter; or
> 4.    Guilty of the included offense of
> reckless endangering in the first degree.

The jury began its deliberations on August 16, 1988. During its deliberations, the jury transmitted, in relevant part, three written communications to the trial court. First, the jury requested in relevant part: "We would like a definition of attempted manslaughter & attempted to recklessly cause of [sic] death." The trial court responded in relevant part: "Please refer to the copy of the Court's instructions which have been provided to you."

Second, the jury again inquired: "We request an explanation as to the law what attempted manslaughter entails." The trial court responded: "I regret that I cannot provide you with any further clarification on this question as you already have the Penal Code definition of Attempted Manslaughter in the Court's Instructions."

Third, the jury requested: "We request a copy of Black's Law Dictionary."[9] The trial court responded: "The dictionary

---

[9]    During the trial court's discussion with the State and defense counsel after the jury requested a copy of Black's Law Dictionary, the State admitted it appeared the jury was confused as to what attempted manslaughter and attempted reckless manslaughter entailed, stating: "Your Honor, apparently what's going on here in the tone of these communications, it's become readily

(continued . . .)

definitions may not be consistent with the language utilized by the Legislature in the statutes, therefore, I am sorry to inform you that I am unable to grant the request."

Two days later, on August 18, 1988, the jury found Stanley guilty of: two counts of first degree reckless endangering, as lesser included offenses of attempted first degree murder (Counts I and II); one count of attempted first degree murder (Count III); one count of attempted manslaughter, as a lesser included offense of attempted second degree murder (Count V); and one count of place to keep firearm (Count VI).  On September 23, 1988, the trial court entered its amended judgment, sentencing Stanley to a five-year indeterminate term of imprisonment for Counts I, II, and VI; life imprisonment without the possibility of parole for Count III; and a ten-year indeterminate term of imprisonment with a mandatory minimum of five years for Count V.  The sentences were to be served concurrently.

**B.    Procedural background**

HRPP Rule 40(a)(3) (2006) provides:

> (3) <u>Inapplicability</u>.  Rule 40 proceedings shall not be available and relief thereunder shall not be granted where the issues sought to be raised have been previously ruled upon or were waived.  Except for a claim of illegal sentence, an issue is waived if the petitioner knowingly and understandingly failed to raise it and it could have

---

(. . . continued)
apparent that the jury is lost in confusion on the question of what is attempted manslaughter and attempted to recklessly cause the death[.]"

> been raised before the trial, at the trial, on appeal, in a habeas corpus proceeding or any other proceeding actually conducted, or in a prior proceeding actually initiated under this rule, and the petitioner is unable to prove the existence of extraordinary circumstances to justify the petitioner's failure to raise the issue. There is a rebuttable presumption that a failure to appeal a ruling or to raise an issue is a knowing and understanding failure.

Because the rule prohibits relief when issues have been previously ruled upon or have been waived, we briefly summarize Stanley's direct appeal and his previous petitions.

### 1. Stanley's direct appeal and previous petitions

#### a. Direct appeal

On October 21, 1988, Stanley directly appealed his convictions to this court, alleging four points of error: (1) "erroneous attempted first degree murder and attempted manslaughter instructions"; (2) "deputy prosecutor's improper comment during closing rebuttal argument"; (3) "insufficient evidence to support the attempted first degree murder conviction"; and (4) "unlawful imposition of sentence in the form of life imprisonment without the possibility of parole for the attempted first degree murder conviction." Stanley I, mem. op. at 2.

In a two-page memorandum opinion, this court summarized Stanley's convictions, facts, and four points of error alleged on appeal, and affirmed Stanley's convictions and held that "[b]ased on a careful review of the record, we discern no reversible error. Affirmed." Id.

### b.    Stanley's two petitions for a writ of habeas corpus

As indicated in Stanley v. State, 76 Hawai'i 446, 879 P.2d 551 (1994) ("Stanley II"), after this court affirmed his convictions in 1989, Stanley filed a petition for a writ of habeas corpus in the United States District Court for the District of Hawai'i ("district court").[10]  76 Hawai'i at 448, 879 P.2d at 553.  He alleged: "(1) erroneous jury instructions; (2) 'improper statement made;' and (3) 'insufficient evidence to support guilt findings.'"  Id.  After an evidentiary hearing, the district court denied Stanley's petition for a writ of habeas corpus on October 11, 1991.  Id.

Stanley then filed a second petition for a writ of habeas corpus in the district court, raising identical grounds as the previous petition for a writ of habeas corpus.  Id.  On January 1, 1992, the district court denied his second petition without holding an evidentiary hearing.  Id.

### c.    First HRPP Rule 40 petition[11]

On February 26, 1992, Stanley filed his First Petition in the circuit court,[12] alleging: "(1) he was denied effective assistance of counsel; and (2) his convictions for attempted

---

[10]    The record does not contain Stanley's two petitions for a writ of habeas corpus.

[11]    The record does not contain the First Petition.

[12]    The Honorable Gail C. Nakatani presided.

first degree murder and attempted manslaughter were not supported by substantial evidence." Id. On June 4, 1992, the circuit court denied the First Petition without a hearing, finding "said petition to be patently frivolous and without a trace of support either in the record or from other evidence submitted by the Petitioner." Id.

Stanley appealed the circuit court's denial of his First Petition to this court. Id. He argued: (1) "the trial court erred in denying his petition because the denial was contrary to an earlier decision by a judge determining that his petition was meritorious"; (2) "because the trial court made no findings of fact or conclusions of law in denying the petition, the resultant order is 'patently wrong, and without a trace of support'"; (3) "the trial court erroneously denied him a HRPP Rule 40 hearing despite Appellant having asserted valid grounds for his unlawful detention, namely: [(a)] denial of effective assistance of counsel; and [(b)] insufficient evidence to support the attempted first degree murder and attempted manslaughter convictions"; and (4) "the trial court erred when it refused certain jury instructions relating to the attempted first degree murder conviction." 76 Hawai'i at 448-51, 879 P.2d at 553-56.

### d.    Stanley II

In a published opinion, this court rejected Stanley's points of error and affirmed the circuit court's denial of his First Petition; however, this court declined to rule on Stanley's fourth point of error because Stanley had failed to raise the issue in his First Petition.[13]  Stanley II, 76 Hawai'i at 452, 879 P.2d at 557.

---

[13]    This court applied the rationale in Bryant v. State, 6 Haw. App. 331, 720 P.2d 1015 (1986), disapproved on other grounds by Briones v. State, 74 Haw. 442, 848 P.2d 966 (1993), in which the ICA found the "[f]ailure to raise [a Rule 40 issue] . . . specifically in the petition does not per se defeat the possibility of obtaining relief on that ground in the Rule 40 proceeding," and that "a pro se petitioner 'should not suffer for his inability to articulate his claim.'"  Stanley II, 76 Hawai'i at 451, 879 P.2d at 556 (alterations and ellipsis in original) (quoting Bryant, 6 Haw. App. at 334-35, 720 P.3d at 1018-19).  We distinguished Bryant from the case:

> Applying the above rationale, Appellant's failure to raise the erroneous exclusion of jury instructions allegation in his petition would apparently not prevent him from asserting the same on appeal.  The instant case, however, is easily distinguished from Bryant.
> In Bryant, because at the trial level: (1) the State was alerted to the general issue; (2) the petitioner, subsequent to the filing of the initial petition at the trial level, clearly raised the specifics of the issue in a subsequent memorandum in support of the petition; (3) the State responded to the issue in a supplemental memorandum; (4) the trial court considered the issue; and, most importantly, (5) HRPP Rule 40(e) provides that amendments to the petition shall be freely allowed, the ICA concluded that despite the petitioner's failure to specifically allege the factual basis of his claim for relief, the claim would survive as an amendment to the petition.
> In the instant case, unlike Bryant, Appellant did not alert the State to the general issue of erroneous denial of jury instructions.  Consequently, the State could not respond, and the trial court never considered the issue.  Appellant's petition, therefore, may not be construed to have been amended to include the erroneous jury instructions issue.  Moreover, because "[t]he general rule is that an issue which was not raised in the lower court will not be considered on appeal," we do not address Appellant's claim of erroneous exclusion of jury instructions.  Kernan v. Tanaka, 75 Haw. 1, 35, 856 P.2d

(continued . . .)

### e.    HRPP Rule 35 motion

On April 24, 2001, Stanley filed a pro se HRPP Rule 35 (1980) motion in the circuit court.[14]  Stanley contended his attempted first degree murder sentence was illegal because he should have been sentenced to a twenty-year imprisonment, as HRS § 706-610 (Supp. 1988),[15] amended by Act 181, Session Laws

---

(. . . continued)
1207, 1224 (1993) (quotation and citations omitted), cert. denied, 510 U.S. 1119, 114 S.Ct. 1070, 127 L.Ed.2d 389 (1994); see also Tax Appeal of Hawaiian Flour Mills, Inc., 76 Hawai'i 1, 868 P.2d 419 (Sup. 1994).

Id. (footnote omitted).

[14]    HRPP Rule 35 (1980) states in relevant part:

**CORRECTION OR REDUCTION OF SENTENCE**
The court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time provided herein for the reduction of sentence.  The court may reduce a sentence within 90 days after the sentence is imposed, or within 90 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within 90 days after entry of any order or judgment of the Supreme Court of the United States denying review of, or having the effect of upholding a judgment of conviction.  A motion to correct or reduce a sentence which is made within the time period aforementioned shall empower the court to act on such motion even though the time period has expired.  The filing of a notice of appeal shall not deprive the court of jurisdiction to entertain a timely motion to reduce a sentence.

[15]    HRS § 706-610 states:

(1)  Apart from first and second degree murder and attempted first and second degree murder, felonies defined by this Code are classified, for the purpose of sentence, into three classes, as follows:

(a)    Class A felonies;
(b)    Class B felonies; and
(c)    Class C felonies.

(continued . . .)

14

1987, could not apply to him as doing so would constitute as an improper ex post facto application of law.

On August 14, 2001, the circuit court filed its order denying Stanley's HRPP Rule 35 motion.  Noting the June 6, 1987 effective date of Act 181, Session Laws 1987, and the commission of Stanley's offenses on March 11, 1988, the circuit court determined there was no improper retroactive application of the sentencing statute.  Thus, the circuit court concluded Stanley failed to state a colorable claim for relief, and denied Stanley's HRPP Rule 35 motion as "patently frivolous and without a trace of support, either in the record, or from other evidence submitted by [Stanley]."  Stanley did not appeal the circuit court's denial of his HRPP Rule 35 motion.

### 2.  Second Petition proceedings

#### a.  Circuit court proceedings

On March 30, 2017, sixteen years after the denial of his HRPP Rule 35 motion, Stanley filed his Second Petition, the subject of this certiorari proceeding, in the circuit court.  He argued: (1) his sentence was illegal and against legislative intent because the HRS specifically provides attempted murder was to be treated as an ordinary class A felony subject to a

---

(. . . continued)
        A felony is a class A, class B, or class C felony when it is so
   designated by this Code.  Except for first and second degree murder and
   attempted first and second degree murder, a crime declared to be a
   felony, without specification of class, is a class C felony.

twenty-year imprisonment, and therefore, his sentence violated the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, as well as the Bill of Rights of the Hawai'i Constitution; (2) attempted manslaughter, specifically HRS § 707-702 (1985),[16] was not a crime recognized in Hawai'i, citing to Pinero, Holbron, and Loa;[17] (3) his indictment presented to the grand jury and petit jury, which contained charged offenses excessive of the "evidenced event," was fatally defective; (4) his place to keep firearm conviction violated the Fifth and Fourteenth Amendments to the United States Constitution, and article I, sections 5 and 10 of the Hawai'i Constitution, HRS § 701-109, and HRS § 134-6 because place to keep a firearm is an included offense of attempted murder, attempted manslaughter, and reckless endangering; (5) the

---

[16]   HRS § 707-702 (1985) states:

> **§707-702 Manslaughter.** (1) A person commits the offense of manslaughter if:
>
> > (a) He recklessly causes the death of another person; or
> > (b) He intentionally causes another person to commit suicide.
>
> (2) In a prosecution for murder it is a defense, which reduces the offense to manslaughter, that the defendant was, at the time he caused the death of the other person, under the influence of extreme mental or emotional disturbance for which there is a reasonable explanation. The reasonableness of the explanation shall be determined from the viewpoint of a person in the defendant's situation under the circumstances as he believed them to be.
>
> (3) Manslaughter is a class B felony.

[17]   These cases are further discussed in Section IV.B.1 of this opinion.

multiple mandatory minimum terms imposed by the trial court imposed were "illegal, redundant, multiplicious, excessive and/or prejudicial" because the jury was the trier of fact and "the only entity capable of determining . . . the maximum and minimum terms of sentence," and therefore, the terms the trial court imposed violated the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and the Bill of Rights of the Hawai'i Constitution; (6) the errors in his case, whether harmless or plain, amounted to cumulative error which was prejudicial and required the reversal of his convictions; and (7) the trial court's denial of his August 1, 1988 motion for extension of time violated the equal protection clause of the United States and Hawai'i constitutions, as well as the United States Constitution's right to effective counsel because he was prejudiced by being forced to proceed with ill-prepared counsel.[18]

On May 9, 2017, the State untimely responded to the Second Petition.[19]  Stanley moved to strike the State's response and

---

[18]    Stanley served the Second Petition on the Department of the Attorney General, State of Hawai'i ("AG") and the Office of the Prosecuting Attorney. The AG discussed Stanley's grounds for relief with the Office of the Prosecuting Attorney; the Office of the Prosecuting Attorney stated the grounds for relief Stanley raised related solely to his conviction.  The AG agreed the Office of the Prosecuting Attorney would file a response on the merits, and it would not be submitting an answer.

[19]    HRPP Rule 40(d) (2006) required the State to respond within thirty days after the service of the HRPP Rule 40 petition from Stanley or within such further time as the court may allow.  HRPP Rule 40(d).

asked the circuit court to set a hearing and appoint him counsel. On February 23, 2018, the circuit court granted Stanley's request to strike the State's response but denied his other requests.

On February 23, 2018, the circuit court filed its order denying the Second Petition without a hearing, ruling as follows: (1) HRPP Rule 40(a)(3) barred Stanley's claim of an improper sentence for attempted first degree murder because it was previously ruled upon by Stanley I; (2) HRPP Rule 40(a)(3) barred Stanley's claim of erroneous attempted reckless manslaughter jury instruction because it was not raised in his 2001 HRPP Rule 35 motion and he failed to prove the existence of extraordinary circumstances justifying his failure to raise this issue, as Holbron and Loa were decided five years before Stanley filed his 2001 HRPP Rule 35 motion; and (3) Stanley's remaining claims, "maturing well before [Stanley I]," had been similarly waived due to his failure to present extraordinary circumstances justifying his failure to previously raise the issues and rebut the presumption that such failure was knowing and understanding.

Stanley timely appealed the circuit court's denial of his Second Petition to the ICA.

C.   ICA proceedings

In his pro se opening brief, Stanley argued the circuit court erred, in relevant part, by (1) determining his claim of

18

erroneous attempted manslaughter jury instruction was deemed waived, as he instead argued his sentence was illegal because he was convicted of the nonexistent offense of attempted reckless manslaughter, and (2) not responding to his equal protection clause claim.

In response, the State conceded Stanley stated a colorable claim as to his erroneous attempted reckless manslaughter conviction argument as the record did not demonstrate whether Stanley was convicted of attempted EMED manslaughter or attempted reckless manslaughter.  However, the State argued that the remainder of Stanley's claims was either waived or meritless.

In its August 22, 2019 SDO, the ICA ruled the State's concession was unwarranted and rejected Stanley's arguments.[20] Stanley, SDO at 7, 10.  The ICA concluded that, inter alia, Stanley failed to state a colorable claim that he could not have been convicted of attempted reckless manslaughter, noting

---

[20]    The ICA also ruled: the circuit court did not fail to issue findings of fact and conclusions of law when denying the Second Petition; the circuit court did not err in ruling his claims, except for involuntary manslaughter, were previously ruled upon or waived because he failed to explain how his claims were not previously ruled upon or waived or how he proved the existence of extraordinary circumstances to justify his failure to raise the claims in his direct appeal, HRPP Rule 35 motion, two habeas corpus petitions to the district court, and the First Petition; the ICA could not address Stanley's claim regarding the Motion for Production of Documents because the record did not contain a Motion for Production of Documents; and Stanley's claim that his sentence of life without the possibility of parole for attempted first degree murder violated the Eighth Amendment to the United States Constitution was raised and ruled upon in Stanley I.  Stanley, SDO at 4-5, 9-10.

Holbron and Loa were issued more than six years after Stanley's convictions.  Stanley, SDO at 5, 9.

The ICA explained that in Holbron, this court held "as a matter of law that HRS §§ 705-500 [(1993)] and 707-702(1)(a) [(1993)] do not and cannot give rise to the offense of 'attempted manslaughter' under any circumstances," overruling State v. Tagaro, 7 Haw. App. 291, 757 P.2d 1175, cert. granted, 69 Haw. 678 (1987), and cert. dismissed, 70 Haw. 666, 796 P.2d 502 (1988).  Stanley, SDO at 5 (quoting Holbron, 80 Hawai'i at 29, 904 P.2d at 914).  The ICA observed this court held that although "there is no offense of attempted involuntary manslaughter premised upon the defendant attempting recklessly to cause the death of another person, in violation of HRS §§ 705-500 and 707-702(1)(a) (Supp. 1988)[,]" "a defendant may be convicted of attempted voluntary manslaughter as a lesser included offense of attempted murder, in violation of HRS §§ 705-500 and 707-702(2), when the State fails to negative a defense of extreme mental or emotional disturbance (EMED) for which there is a reasonable explanation."  Stanley, SDO at 5-6 (citing Holbron, 80 Hawai'i at 29, 34, 43-45, 904 P.2d at 914, 919, 928-30).

According to the ICA, Stanley, in his Second Petition, admitted he made an EMED defense as he stated his counsel requested an EMED jury instruction and the jury "rejected the

20

Petitioner's EMED defense." Stanley, SDO at 6. The ICA stated that Stanley pointed to his convictions of two counts of first degree reckless endangering as proof his EMED defense was rejected by the jury and that the jury found he acted recklessly, implying he was convicted for attempted involuntary manslaughter because Counts I and II demonstrated the jury found his conduct to be reckless after rejecting his EMED defense. Id.

The ICA disagreed, concluding Stanley's convictions of two counts of first degree reckless endangering did not support a conclusion that he was convicted of attempted involuntary manslaughter in Count V. Id. It reasoned that although Stanley was convicted on two counts of first degree reckless endangering, the lesser included offense of attempted first degree murder, he was also convicted of attempted first degree murder in Count III and the lesser included offense of attempted manslaughter in Count V. Id. Thus, the ICA concluded that although the jury rejected Stanley's EMED defense in Count III because he could not have been convicted of attempted first degree murder if the State did not negative his EMED defense, the jury did not reject his EMED defense in Count V because he could only be convicted of attempted manslaughter if the State failed to negative his EMED defense. Stanley, SDO at 6-7.

The ICA also concluded Stanley's convictions for first degree reckless endangering did not depend on whether the jury accepted his EMED defense because the jury did not consider an EMED defense for Counts I and II.  Stanley, SDO at 7.  The ICA stated consideration of an EMED defense would only arise if the jury believed the State proved all elements of attempted first degree murder because an EMED defense mitigates murder or attempted murder.  Id. (citing Holbron, 80 Hawai'i at 43, 904 P.2d at 928).  It stated that if the State had proven attempted first degree murder in Counts I and II, the jury would not consider the lesser included offense of first degree reckless endangering because the outcome of the jury considering the EMED defense could only lead to a conviction for attempted first degree murder or attempted manslaughter, depending on whether the jury believed the State negatived Stanley's EMED defense.  Id.  The ICA stated that only a failure to prove attempted first degree murder could lead to the jury considering first degree reckless endangering.  Id.  Thus, the ICA concluded the jury did not reject Stanley's EMED defense in Counts I and II.  Id.  The ICA also stated Stanley's convictions for attempted first degree murder in Count III and attempted manslaughter in Count V demonstrated the jury may decide whether the State negatived an EMED defense for each charge and was not required to apply the same finding as to EMED to all charges.  Id.

22

The ICA ruled the State's concession that Stanley presented a colorable claim that he was convicted of attempted reckless manslaughter based on Holbron and Loa was unwarranted. Stanley, SDO at 7-8. The ICA quoted Stanley's opening brief in Stanley I, in which he argued the attempted manslaughter jury instructions were erroneous and confused the jury:

> [T]he use of the term "recklessly" in the instruction would undeniably lead a layperson to conclude that the instruction applied to both forms of attempted manslaughter.
> No rational trier of fact could be expected to differentiate the two forms of attempted manslaughter and the different circumstances under which they were to be considered based upon the instructions in the case at bar.
> . . .
> The jury's confusion is all too well illustrated by their repeated communications seeking clarification of attempted manslaughter. The court merely referred the jury to the instructions already provided, which had, of course, triggered the questions in the first place. (RA: 248-254). Even the verdict forms were of no assistance as they, too, indicated the existence of only one form of attempted manslaughter.
> The defective attempted manslaughter instructions in their entirety rendered the jury instructions prejudicially erroneous and misleading, affecting substantial rights of Stanley at trial and depriving him of due process of law under the Hawaii and federal constitutions.

Stanley, SDO at 8 (alteration and ellipsis in original). The ICA observed Stanley I affirmed Stanley's convictions, specifically noted he raised the issue of "erroneous attempted first degree murder and attempted manslaughter instructions," and held "we discern no reversible error." Stanley, SDO at 9 (citing Stanley I, mem. op. at 1-2). As such, the ICA opined Stanley did not state a colorable claim in this appeal based on an erroneous attempted manslaughter jury instruction because the

23

issue was previously raised and ruled upon.  Id.  It further opined Stanley failed to state a factual basis to support a claim that his conviction for attempted manslaughter was for attempted involuntary manslaughter based on reckless conduct. Id.  Thus, the ICA concluded Stanley failed to state a colorable claim that he could not have been convicted of attempted manslaughter and that his sentence was illegal.  Id.

The ICA also ruled Stanley did not claim his sentence for attempted first degree murder violated the equal protection clause of the United States and Hawai'i constitutions in his Second Petition.  Stanley, SDO at 10.  The ICA stated, "[T]he general rule is that an issue which was not raised in the lower court will not be considered on appeal[.]"  Id. (alterations in original) (quoting Stanley II, 76 Hawai'i at 451, 879 P.2d at 556).  The ICA stated Stanley failed to prove the existence of extraordinary circumstances to justify his failure to raise that claim in his direct appeal, two habeas corpus petitions to the district court, and the First Petition.  Id.  Therefore, the ICA concluded relief for this claim was unavailable under HRPP Rule 40(a)(3).  Id.

## D.    Application for a writ of certiorari

Stanley presents the following relevant questions on certiorari:[21]

> [1]. Did the Intermediate Court of Appeals commit error by failing to apply obvious existing laws, rules and/or mandated canon to the Appellant's appeal?
>
> [2]. Did the Intermediate Court of Appeals commit error in failing to address in any manner the Appellant's Constitutional Challenge submitted within Petition and appeal (See Petition S.P.P. No. 17-1-0007 pages 18-24) pertaining Equal Protection?
>
> [3]. Did the Intermediate Court of Appeals commit error in finding Appellant can be convicted and punished for a crime previously determined to be not a cognizable crime in the State of Hawaii?
>
> [4]. Did the Intermediate Court of Appeals commit error in not finding exceptional circumstance pertaining the degree and level of the Appellant's education at the time of the offenses charged against the Appellant, and the ensuing trial and sentence?

## III. Standards of review

## A.    HRPP Rule 40

> Review of orders denying HRPP Rule 40 petitions is de novo:
>
>> As a general rule, a hearing should be held on a Rule 40 petition for post-conviction relief where the petition states a colorable claim. To establish a colorable claim, the allegations of the petition must show that if taken as true the facts alleged would change the verdict, however, a petitioner's conclusions need not be regarded as true. Where examination of the record of the trial court's proceedings indicates that the petitioner's allegations show no colorable claim, it is not error to deny the petition without a hearing. The question on appeal of a denial of a Rule 40 petition without a hearing is whether the trial record indicates that

---

[21]    Stanley also presents one other question on certiorari: "Did the Intermediate Court of Appeals commit error by ignoring Grounds presented within the Appellant's appeal (CAAP-18-0000141) and Petition (S.P.P. No. 17-1-007), and fail to respond to all of his meritorious claims?" We note the ICA did not ignore and fail to respond to Stanley's claims; it appears the ICA summarized the arguments and questions Stanley presented.

> Petitioner's application for relief made such a showing of a colorable claim as to require a hearing before the lower court.
>
> Dan v. State, 76 Hawai'i 423, 427, 879 P.2d 528, 532 (1994) (citation omitted).

Lewi v. State, 145 Hawai'i 333, 345, 452 P.3d 330, 342 (2019).

## B.    Sentencing

"The authority of a trial court to select and determine the severity of a penalty is normally undisturbed on review in the absence of an apparent abuse of discretion or unless applicable statutory or constitutional commands have not been observed."

State v. Reis, 115 Hawai'i 79, 83-84, 165 P.3d 980, 984-85 (2007) (internal quotation marks and citation omitted).

## C.    Erroneous jury instructions and nonexistent offenses

> When jury instructions or the omission thereof are at issue on appeal, the standard of review is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading.
>
> Erroneous instructions are presumptively harmful and are a ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudicial. Error is not to be viewed in isolation and considered purely in the abstract. It must be examined in the light of the entire proceedings and given the effect which the whole record shows it to be entitled. In that context, the real question becomes whether there is a reasonable possibility that error might have contributed to conviction. If there is such a reasonable possibility in a criminal case, then the error is not harmless beyond a reasonable doubt, and the judgment of conviction on which it may have been based must be set aside.
>
> State v. Holbron, 80 Hawai'i 27, 32, 904 P.2d 912, 917, reconsideration denied, 80 Hawai'i 187, 907 P.2d 773 (1995) (citations, footnote, brackets, and quotation signals omitted) (emphasis in original).
> "[T]here can be no offense of 'attempted manslaughter' within the meaning of HRS § 707-702(1)(a)[.]"

26

> Id. at 45, 904 P.2d at 930.  Thus, a jury instruction
> purporting to describe that nonexistent offense is
> erroneous.  Id.

Loa, 83 Hawai'i at 350, 926 P.2d at 1273 (alterations in

original).

## IV.  Discussion

### A.    HRPP Rule 40 principles

We begin our analysis with the ICA's ruling that Stanley

failed to state a colorable claim that his sentence for Count V

was illegal.  The ICA concluded that in addition to failing to

state a factual basis that he was convicted of attempted

reckless manslaughter, he previously raised and Stanley I ruled

upon the issue of erroneous attempted manslaughter jury

instructions.  This issue requires us to examine HRPP Rule 40.

We begin with its plain language.

HRPP Rule 40(a)(1) states in relevant part:

> (1) From Judgment.  At any time but not prior to final
> judgment, any person may seek relief under the procedure
> set forth in this rule from the judgment of conviction, on
> the following grounds:
>
>     (i) that the judgment was obtained or sentence
> imposed in violation of the constitution of the United
> States or of the State of Hawai'i;
>     (ii) that the court which rendered the judgment was
> without jurisdiction over the person or the subject matter;
>     (iii) that the sentence is illegal;
>     (iv) that there is newly discovered evidence; or
>     (v) any ground which is a basis for collateral attack
> on the judgment.

(Emphasis added.)

HRPP Rule 40(a)(3), which governs waiver of issues in a

HRPP Rule 40 proceeding, states:

27

(3) <u>Inapplicability</u>.  Rule 40 proceedings shall not be available and relief thereunder shall not be granted where the issues sought to be raised have been previously ruled upon or were waived.  <u>Except for a claim of illegal sentence, an issue is waived if the petitioner knowingly and understandingly failed to raise it and it could have been raised before the trial, at the trial, on appeal, in a habeas corpus proceeding or any other proceeding actually conducted, or in a prior proceeding actually initiated under this rule, and the petitioner is unable to prove the existence of extraordinary circumstances to justify the petitioner's failure to raise the issue</u>.  There is a rebuttable presumption that a failure to appeal a ruling or to raise an issue is a knowing and understanding failure.

(Emphasis added.)  In turn, HRPP Rule 40(f) provides that "[i]f a petition alleges facts that if proven would entitle the petitioner to relief, the court shall grant a hearing which may extend only to the issues raised in the petition or answer[,]" but "the court may deny a hearing if the petitioner's claim is patently frivolous and is without trace of support either in the record or from other evidence submitted by the petitioner."

Thus, the plain language of HRPP Rule 40 allows a petitioner to bring a claim of illegal sentence "[a]t any time but not prior to final judgment," even if the petitioner had not raised a claim of illegal sentence in a previous petition and failed to show extraordinary circumstances justifying their failure to do so.  In <u>Akau v. State</u>, 144 Hawai'i 159, 439 P.3d 111 (2019), we held the doctrine of laches did not apply in the context of HRPP Rule 40 proceedings, observing HRPP Rule 40 lacked a statute of limitations for bringing post-conviction petitions.  144 Hawai'i at 162, 439 P.3d at 114.  We declined to

impose "a kind of judicially-crafted statute of limitations on Rule 40 petitions seeking relief from a judgment of conviction when that rule as promulgated explicitly states that such petitions may be brought '[a]t any time' so long as they are not brought 'prior to final judgment[.]'" Id. (alterations in original) (quoting HRPP Rule 40(a)(1)) (citing HRPP Rule 40(a)(2)).  We opined the lack of a statute of limitations appeared to be deliberate, as the drafters of HRPP Rule 40 rejected using an Illinois statute as a template for a statute of limitations on post-conviction petitions.  Id. (citing Comm. For Penal Rules Revision of the Judicial Council of Haw., Proposed Hawai'i Rules of Penal Procedure at 206 (June 1985)).

Thus, put simply, HRPP Rule 40 allows a petitioner to bring a claim of illegal sentence "[a]t any time" after final judgment, even if they failed to raise the illegal sentence claim in a previous petition; if the petitioner states a colorable claim, they are entitled to a hearing under HRPP Rule 40(f).  See Flubacher v. State, 142 Hawai'i 109, 114 n.7, 414 P.3d 161, 166 n.7 (2018) ("[A]ny analysis of waiver must be made in light of HRPP Rule 40(a)(3), which specifically exempts illegal sentence claims from being waived.").  With the foregoing principles in mind, we now turn to Stanley's contentions on certiorari.

**B.    The record does not demonstrate Stanley was convicted of attempted EMED manslaughter; if he was convicted of attempted reckless manslaughter, he was subject to an illegal sentence for a non-existent crime and the presumptively harmful erroneous attempted reckless manslaughter jury instruction was not harmless beyond a reasonable doubt**

Stanley maintains he was convicted of the nonexistent offense of attempted reckless manslaughter.  If this is true, he would have been subject to an illegal sentence under HRPP Rule 40(a)(3) because a sentence for a crime that does not exist is an illegal sentence in Hawai'i.  We begin our analysis by discussing the history of the nonexistent offense of attempted reckless manslaughter.

**1.    The history of the nonexistent offense of attempted reckless manslaughter in Hawai'i**

**a.    <u>Pinero</u>**

While Stanley's 1988 direct appeal was pending, this court issued <u>Pinero</u> on July 25, 1989, approximately five months before this court decided <u>Stanley I</u>.  In <u>Pinero</u>, the trial court instructed the jury as follows:

> In this case, you must first determine whether the Defendant is guilty or not guilty of Murder in the First Degree.  If you find that the offense of Murder in the First Degree has not been proved from the evidence beyond a reasonable doubt, you may then consider whether the Defendant is guilty or not guilty of the lesser included offense of Manslaughter.
> A person commits the offense of Manslaughter if he recklessly causes the death of another person; or in a prosecution for murder it is a defense, which reduces the offense to Manslaughter, that the defendant was, at the time he caused the death of the other person, under the influence of extreme mental or emotional disturbance for which there is a reasonable explanation.  The

> reasonableness of the explanation shall be determined from the viewpoint of a person in the defendant's situation under the circumstances as he believed them to be.

70 Haw. at 515, 778 P.2d at 709. During its deliberations, the jury asked the trial court for a "legal definition of the elements of the lesser charge of manslaughter" and the trial court responded by referring the jury to the foregoing instructions. 70 Haw. at 516, 778 P.2d at 709. The jury convicted the defendant of, inter alia, first degree murder and the defendant appealed. 70 Haw. at 512, 778 P.2d at 707.

This court vacated the defendant's conviction, holding the trial court erred because it

> instruct[ed] . . . the jury to first consider whether or not the defendant was guilty of the charged offense and if it found the offense had not been proved, to then proceed to the lesser offense. "If [a lesser-included offense] instruction is given, it is customary to tell the jury to consider first the greater offense, and to move on to consideration of the lesser offense only if they have some reasonable doubt as to guilt of the greater offense."
>      The trial court's error here was one of omission; it failed to fully explain the significance of HRS § 707-702(2) and to guide the jury in its consideration of the mitigating defense. The lesser-included offense instruction may well have had an effect of precluding consideration of possibly extenuating circumstances during deliberations on the charge of murder in the first degree.

70 Haw. at 524-25, 778 P.2d at 714 (citations omitted) (second alteration in original).

This court distinguished HRS § 707-702(2) from HRS § 707-702(1)(a), stating the provisions of manslaughter as defined by HRS § 707-702(1)(a) "may be established by the same or less than all the facts required to prove murder; and this renders it a lesser included offense of murder." 70 Haw. at

31

523, 778 P.2d at 713.  However, this court stated the provisions of HRS § 707-702(2) did not describe manslaughter as a lesser included offense of murder, but instead served "to reduce murder to manslaughter 'when mitigating mental or emotional disturbances are present.'"  70 Haw. at 523, 778 P.2d at 714.  This court stated HRS § 707-702(2) was "more accurately the mitigating defense," as it has been characterized as "voluntary manslaughter [because it] involves the intentional [or knowing] killing of another while under the influence of a reasonably induced [extreme mental or] emotional disturbance . . . causing a temporary loss of normal self-control."  70 Haw. at 523-24, 778 P.2d at 714 (alterations and ellipsis in original).  Although Pinero did not reach the question of whether attempted reckless manslaughter was a recognized offense in Hawai'i, implicit in its holding was that "the only non-exculpatory circumstance that the [Hawai'i Penal Code] recognizes as being legally capable of 'mitigating' murder to manslaughter is the 'mitigation' of 'extreme mental or emotional disturbance for which there is a reasonable explanation' as set forth in HRS § 707-702(2)."  Holbron, 80 Hawai'i at 45, 904 P.2d at 930 (citing Pinero, 70 Haw. at 523-24, 778 P.2d at 714).

     b.    Holbron

     A year after Pinero, we issued Holbron, in which we discussed the "offense" of attempted reckless manslaughter.  80

32

Hawai'i at 44-45, 904 P.2d at 929-30.  In Holbron, the State charged the defendant with attempted second degree murder.  80 Hawai'i at 30, 904 P.2d at 915.  Defense counsel objected to the instruction of the "included offense" of "Attempted Manslaughter (Reckless conduct)," which the trial court denied.  80 Hawai'i at 31, 904 P.2d at 916.  At the conclusion of the parties' final arguments, the trial court instructed the jury that "if it was 'unable to agree that the [prosecution] has proven beyond a reasonable doubt' that [the defendant] had committed the offense of Attempted Murder, the jury could then go on to consider the lesser included offense of 'Attempted Manslaughter (Reckless Conduct).'"  80 Hawai'i at 46, 904 P.2d at 931 (first alteration in original).  The jury convicted the defendant of the charged offense of attempted second degree murder and he appealed.  80 Hawai'i at 32, 904 P.2d at 917.

After discussing voluntary and involuntary manslaughter, this court unequivocally held there could be no attempt to commit involuntary manslaughter, and therefore, there is no offense of attempted reckless manslaughter.[22]  80 Hawai'i at 33-45, 904 P.2d at 918-30.  As such, this court held the attempted

_____

[22]    In holding there was no offense of attempted reckless manslaughter, Holbron overruled Tagaro, in which the ICA held that under the circumstances of that case, attempted reckless manslaughter was an included offense of attempted murder, and that the trial court was required to sua sponte instruct the jury it could find the defendant guilty of attempted reckless manslaughter if it did not find him guilty of attempted murder.  80 Hawai'i at 47, 904 P.2d at 932.

reckless manslaughter jury instruction was erroneous as it described a nonexistent offense. 80 Hawai'i at 43, 904 P.2d at 928. However, invoking the presumption that jurors are reasonable and generally follow the instructions given, this court concluded that because "the jury could not have reached, much less considered, the disputed instruction that erroneously described a nonexistent offense, there is no 'reasonable possibility that [the] error might have contributed to [the defendant's] conviction." 80 Hawai'i at 46-47, 904 P.2d at 931-32 (first alteration in original). As such, we held the erroneous attempted reckless manslaughter jury instruction harmless beyond a reasonable doubt and affirmed the defendant's attempted second degree murder conviction. Id.

### c.    Loa

Approximately a year later after Holbron, we issued Loa. In Loa, the State charged the defendant with, inter alia, attempted first degree murder. 83 Hawai'i at 339, 926 P.2d at 1262. The trial court instructed the jury, inter alia, as follows:

> If and only if you find [the defendant] not guilty of Attempted Murder in the First Degree, or you are unable to reach a unanimous verdict as to the offense of Attempted Murder in the First Degree, then you must determine whether [the defendant] is guilty or not guilty of the lesser included offense of Attempted Manslaughter.
> A person commits the offense of Attempted Manslaughter if he intentionally engages in conduct intended or known to recklessly cause the death of another person.

34

> There are two elements to the offense of Attempted Manslaughter, each of which must be proven by the prosecution beyond a reasonable doubt. The two elements are:
> 1.   That [the defendant] intentionally engaged in a course of conduct; and
> 2.   That [the defendant] consciously disregarded a substantial and unjustifiable risk that his conduct would be intended or known to recklessly cause the deaths of [the complainant] and [her male companion].

83 Hawai'i at 344, 926 P.2d at 1267 (last two alterations in original).  The trial court also instructed the jury with respect to first degree assault and second degree reckless endangering as additional offenses included within attempted first degree murder.  83 Hawai'i at 359, 926 P.2d at 1282.  During its deliberations, the jury transmitted a written communication to the trial court, asking:

> What do we do now on Count I, Attempted Murder in the First Degree?  We are unable to reach a unanimous decision. Do we now have to consider Attempted Manslaughter or are we deadlocked and stop deliberating on Count I?  Some jurors are not willing to settle for a lesser charge.

83 Hawai'i at 343-44, 926 P.2d at 1266-67.  With the concurrence of counsel, the trial court responded, "Please reread the attached instructions," and furnished the jury with the foregoing instructions in writing.  83 Hawai'i at 344, 926 P.2d at 1267.  The jury convicted the defendant of, inter alia, "'attempted reckless manslaughter' (as a supposedly included offense of the charged offense of attempted murder in the first degree)."  83 Hawai'i at 339, 926 P.2d at 1262.

This court held the trial court plainly erred in instructing the jury it could convict the defendant of the nonexistent offense of attempted reckless manslaughter, and it was not harmless beyond a reasonable doubt because it was the sole basis of the defendant's attempted reckless manslaughter conviction.  83 Hawai'i at 357, 926 P.2d at 1280.  This court stated, "It is self-evident that, being non-existent, attempted reckless manslaughter cannot be 'included' within attempted first degree murder[.]"  83 Hawai'i at 358, 926 P.2d at 1281.  This court further stated that "the giving of such an erroneous instruction constitutes plain error as a matter of law when 'there is a reasonable possibility that [the instruction] might have contributed to conviction,' because the error 'seriously affect[s] the fairness, integrity, or public reputation of [the] judicial proceedings.'"  Id. (alterations in original) (citation omitted).

This court rejected the State's suggestion that the erroneous attempted reckless manslaughter jury instruction "obviously benefitted" the defendant because the only alternative was to convict him of attempted first degree murder. 83 Hawai'i at 359, 926 P.2d at 1282.  Invoking the presumption that jurors are reasonable and generally follow the instructions given, this court stated the fact that the jury reached the erroneous jury instruction at all signified the jury was unable

to convict the defendant of attempted first degree murder.  Id.
Moreover, this court noted that although the trial court had
also instructed the jury to the other lesser included offenses
of first degree assault and second degree reckless endangering,
"subsumed within these instructions was a directive that the
jury could not consider these included offenses if it convicted
[the defendant] of attempted reckless manslaughter."  Id.  As
such, the jury's conviction based on the erroneous attempted
manslaughter jury instruction precluded it from reaching the
other lesser included offenses.  Id.  This court stated that "in
the absence of the erroneous instruction, the jury may have
acquitted [the defendant] altogether in connection with the
attempted first degree murder charge.  However compelling the
evidence of criminal wrongdoing might have been, such a
possibility cannot be dismissed absolutely."  Id. (footnote
omitted).

This court held the erroneous attempted reckless
manslaughter jury instruction was "presumptively harmful" and
"necessarily contributed to [the defendant's] conviction of the
nonexistent offense of attempted reckless manslaughter."  Id.
This court stated that "[o]bviously, in absence of the erroneous
instruction, [the defendant] could not have been so
convicted[,]" which "seriously affect[ed] the fairness [and]

integrity . . . of [the] judicial proceedings." Id. (last three alterations and ellipsis in original).

### 2. The erroneous attempted reckless manslaughter jury instruction was not harmless beyond a reasonable doubt

With the principles of Pinero, Holbron, and Loa in mind, we now turn to this case. The ICA gave two bases for rejecting Stanley's attempted reckless manslaughter conviction argument: (1) Stanley previously raised this argument which was ruled upon in Stanley I and (2) he failed to state a factual basis to support his claim that he was convicted of attempted reckless manslaughter. After reviewing the jury instructions, verdict forms, and the record as a whole, we hold Stanley stated a colorable claim as to his attempted manslaughter conviction in Count V.

As to the ICA's first basis for rejecting Stanley's attempted reckless manslaughter argument, the ICA concluded that Stanley did not state a colorable claim of erroneous attempted manslaughter jury instruction in the instant appeal because he previously raised the issue of "erroneous attempted first degree murder and attempted manslaughter instructions" and Stanley I held "we discern no discernible error." Stanley I, mem. op. at 1-2. As the ICA noted, Stanley previously argued that these jury instructions were erroneous and confusing. However, he did not argue, as he does here, that his sentence was illegal

38

because it was based on a crime that does not exist.  Indeed,
Stanley's 1988 direct appeal and our previous decision
predate Holbron and Loa.  Accordingly, we hold that this court
has not previously ruled upon the issue in this case and Stanley
is not barred from Rule 40 relief under HRPP Rule 40(a)(3) on
this issue.

As to the ICA's second basis for rejecting Stanley's
attempted reckless manslaughter jury conviction argument, the
ICA incorrectly concluded Stanley failed to state a colorable
claim that his conviction in Count V was for attempted reckless
manslaughter.  Because the record does not demonstrate Stanley
was convicted of attempted manslaughter based on the mitigating
defense of EMED, "the only non-exculpatory circumstance legally
capable of mitigating murder to manslaughter," we hold Stanley
stated a colorable claim that he was convicted of attempted
reckless manslaughter.[23]

---

[23]    For the same reasons, we note that in its February 23, 2018 order
denying the Second Petition without a hearing, the circuit court erroneously
concluded HRPP Rule 40(a)(3) barred Stanley's claim of erroneous attempted
manslaughter jury instruction because Stanley failed to prove the existence
of extraordinary circumstances justifying his failure to raise this issue, as
Holbron and Loa were decided five years before his 2001 HRPP Rule 35 motion.
As Stanley argued, the circuit court appeared to misconstrue the arguments
presented in his almost-eighty-pages pro se Second Petition, as Stanley had
also argued he was convicted of the nonexistent offense of attempted reckless
manslaughter.  See Villaver v. Sylva, 145 Hawai'i 29, 36, 445 P.3d 701, 708
(2019) (explaining that, in the context of pro se pleadings, "[a] fundamental
tenet of Hawai'i law is that '[p]leadings prepared by pro se litigants should
be interpreted liberally[,]'" and that "[t]he underpinnings of this tenet
rest on the promotion of equal access to justice") (alterations in original)
(citation omitted); see also Bryant, 6 Haw. App. at 335, 720 P.2d at 1019
("Although the [HRPP Rule 40] Petition did not specify as a ground for relief
                                                      (continued . . .)

As stated above,

> [e]rroneous instructions are presumptively harmful and are a ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudicial.  Error is not to be viewed in isolation and considered purely in the abstract.  It must be examined in the light of the entire proceedings and given the effect which the whole record shows it to be entitled.  In that context, the real question becomes whether there is a reasonable possibility that error might have contributed to conviction.  If there is such a reasonable possibility in a criminal case, then the error is not harmless beyond a reasonable doubt, and the judgment of conviction on which it may have been based must be set aside.

Loa, 83 Hawai'i at 350, 926 P.2d at 1273.

Here, the trial court instructed the jury as follows:

> If you are unable to find that the offense of attempted murder in the first degree or second degree has been proven beyond a reasonable doubt, you may then consider whether the defendant is guilty or not guilty of the included offense of attempted manslaughter.
> In a prosecution for attempted murder in the first degree or second degree, attempted manslaughter is an included offense.  The offense of attempted manslaughter is committed if the defendant attempted to recklessly cause the death of another person.
> In a prosecution for attempted murder in the first degree or second degree, it is also a defense, which reduces the offense to attempted manslaughter, that the defendant was, at the time he attempted to cause the death of another person, under the influence of extreme mental or emotional disturbance for which there is a reasonable explanation.  The reasonable-ness of the explanation shall be determined from the viewpoint of a person in the defendant's situation under the circumstances as he believed them to be.
> The burden is upon the State to prove beyond a reasonable doubt that the defendant was not acting under the influence of extreme mental or emotional disturbance for which there is a reasonable explanation.  If the State has not done so, you must find the defendant guilty of the included offense of attempted manslaughter.  If the State has done so, you must find the defendant guilty of the offense of attempted murder in the first or second degree.

---

(. . . continued)
the precise factual basis upon which the circuit court ruled, it must be borne in mind that Defendant was pro se when he filed the Petition and should not suffer for his inability to articulate his claim.").

(Emphasis added.)

When, based on the entirety of the record, there is a reasonable possibility that a defendant was convicted of a non-existent offense, the judgment of conviction must be set aside. The trial court's erroneous attempted reckless manslaughter jury instruction was "presumptively harmful" because it described the nonexistent offense of attempted reckless manslaughter, and such an instruction "[is] a ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudicial."[24]  See Loa, 83 Hawai'i at 350, 926 P.2d at 1273.  The critical inquiry, then, is whether the attempted reckless manslaughter jury instruction "necessarily contributed to [Stanley's] conviction of the nonexistent offense of attempted reckless manslaughter."  Loa, 83 Hawai'i at 359, 926 P.2d at 1282.

Unlike in Holbron and like in Loa, here, the record demonstrates the jury reached the erroneous attempted reckless manslaughter jury instruction as evidenced by its transmitted written communications to the trial court asking for

---

[24]    We note the trial court's jury instructions concerning when the jury could consider the mitigating EMED defense were erroneous, as they "may well have had an effect of precluding consideration of possibly extenuating circumstances during deliberations on the charge of [attempted] murder in the first [and second] degree."  Pinero, 70 Haw. at 525, 778 P.2d at 714; see also Holbron, 80 Hawai'i at 45, 904 P.2d at 930; Loa, 83 Hawai'i at 358, 926 P.2d at 1281.

clarification on attempted reckless manslaughter, as well as its verdict form finding Stanley guilty of attempted manslaughter in Count V.  The question then turns to whether there was a reasonable probability the jury convicted Stanley of attempted reckless manslaughter.  Although the State conceded Stanley stated a colorable claim because the record did not demonstrate whether Stanley was convicted of attempted EMED manslaughter, the ICA concluded the State's concession was unwarranted because "the jury did not reject the EMED defense when Stanley was convicted of Attempted Manslaughter in Count V because he could only be convicted of Attempted Manslaughter if the State failed to negative his EMED defense."  Stanley, SDO at 6-7.  For the reasons discussed below, the ICA's analysis is flawed.

The record does not support the ICA's conclusion.  First, the jury's Count V verdict form, which only shows a conviction of "Attempted Manslaughter," is ambiguous as to whether it was based on attempted reckless manslaughter or attempted EMED manslaughter.  See State v. Lincoln, 3 Haw. App. 107, 122, 643 P.2d 807, 818 (App. 1982), superseded in part by statute as stated in Briones, 74 Haw. at 456 n.7, 848 P.2d at 973 n.7 (looking to the jury's verdict forms to resolve alleged inconsistency in jury instructions and resulting verdicts).  Second, the jury's transmitted written communications to the trial court asking for clarification as to attempted reckless

manslaughter show the jury's confusion as to attempted reckless manslaughter.[25]  Third, the structure of the trial court's jury instructions prejudiced Stanley as they misled the jury.  It appears the ICA, noting Stanley admitted he made an EMED defense that the jury rejected, relied on the trial court's attempted EMED manslaughter jury instruction, which came after the attempted reckless manslaughter jury instruction, to conclude the jury did not reject Stanley's EMED defense.  However, there is a reasonable possibility the jury, having found Stanley guilty of attempted reckless manslaughter, did not move on to consider the attempted EMED manslaughter jury instruction.  Further, because the trial court instructed the jury to also consider first degree reckless endangering in Count V, it could have been possible for the jury to find Stanley not guilty of that charge as well, thereby acquitting Stanley of attempted second degree murder.  "However, subsumed within these instructions was a directive that the jury could not consider these included offenses if it convicted [Stanley] of attempted reckless manslaughter.  The jury's guilty verdict thus precluded it from reaching them[.]"  Loa, 83 Hawai'i at 359, 926 P.2d at 1282.  "The jury may have acquitted [Stanley] altogether in connection with the attempted [second] degree murder charge.

---

[25]     Indeed, the State admitted it appeared the jury was confused as to what attempted manslaughter and attempted reckless manslaughter entailed.  See supra note 9.

However compelling the evidence of criminal wrongdoing might have been, such a possibility cannot be dismissed absolutely." Id. (footnote omitted).

Because of the lack of evidence in the record demonstrating Stanley was convicted of attempted EMED manslaughter, there is a reasonable possibility that the jury may have convicted Stanley of the nonexistent offense of attempted reckless manslaughter. Therefore, the erroneous attempted reckless manslaughter jury instruction was not harmless beyond a reasonable doubt. This requires us to vacate his attempted manslaughter conviction and remand to the circuit court for further proceedings consistent with this opinion.[26]

---

[26] On remand, double jeopardy principles preclude Stanley from being retried for attempted second degree murder in Count V. See Loa, 83 Hawai'i at 360, 926 P.2d at 1283 (holding the defendant cannot be retried on the original charge of attempted first degree murder because he was convicted of the "included offense" of the nonexistent offense of attempted reckless manslaughter, as doing so would violate HRS § 701-110(1) (1993), the defendant's constitutional right against double jeopardy, and State v. Feliciano, 62 Haw. 637, 618 P.2d 306 (1980)). Here, the trial court instructed the jury that "[i]f you are unable to find that the offense of Attempted Murder in the First Degree or Second Degree has been proven beyond a reasonable doubt, you may then consider whether the Defendant is guilty or not guilty of the included offense of Attempted Manslaughter." The jury's written communications asking for clarification as to attempted reckless manslaughter are significant in light of "the sound presumption of appellate practice that jurors are reasonable and generally follow the instructions that they are given." Loa, 83 Hawai'i at 359, 926 P.2d at 1282.

> We presume that the jury followed the [trial] court's instructions and first considered the evidence with regard to the Attempted Murder charge. Consequently, the jury would first have considered the charged offense and would have gone on to consider any lesser offense only if [it was] unable to agree that the prosecution had proven that [Stanley] was guilty of the charged offense beyond a reasonable doubt.

(continued . . .)

C. **Stanley did not claim his sentence for attempted first degree murder violates the equal protection clause of the United States or Hawai'i constitutions**

Stanley maintains that his sentence for attempted first degree murder violates the equal protection clause of the United States and Hawai'i constitutions because Hawai'i's first degree murder statute affords greater protection to judges, prosecutors, and police officers or it is not applied equally, and argues the ICA erred in failing to address that claim. As the ICA concluded, Stanley's failure to raise this argument in the circuit court and failure to prove the existence of extraordinary circumstances to justify his failure to raise this argument in his direct appeal, two habeas corpus petitions to the district court, and the First Petition bar relief under HRPP Rule 40(a)(3).

D. **The record is insufficient to address Stanley's remaining claim**

The record is insufficient to address Stanley's remaining claim on certiorari, namely whether the ICA erred in not finding exceptional circumstances existed because of the degree and level of his education at the time of his offenses and trial.

---

(. . . continued)
Id.  "Thus, the fact that the jury reached the erroneous [attempted reckless manslaughter jury] instruction at all signifies it was unable to convict [Stanley] of attempted [second] degree murder."  Id.  "The jury having acquitted [Stanley] of [attempted second degree murder] by virtue of its verdict, we hold that [Stanley] may not be retried for it."  Loa, 83 Hawai'i at 361, 926 P.2d at 1284.

## V.    Conclusion

For the reasons explained above, we vacate the ICA's October 2, 2019 judgment on appeal, the circuit court's February 23, 2018 order denying the Second Petition, and Stanley's conviction of attempted manslaughter and the ten-year sentence that flowed from it.  We remand this case to the circuit court for further proceedings consistent with this opinion.

| | |
|---|---|
| Edward G. Stanley, petitioner pro se | /s/ Mark E. Recktenwald |
| | /s/ Paula A. Nakayama |
| Sonja P. McCullen, (on the briefs), for respondent | /s/ Sabrina S. McKenna |
| | /s/ Michael D. Wilson |
| | /s/ Trish K. Morikawa |

