**Electronically Filed
Intermediate Court of Appeals
CAAP-20-0000284
25-FEB-2022
07:59 AM
Dkt. 143 SO**

NO. CAAP-20-0000284

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAI'I, Plaintiff-Appellee, v.
JOSHUA IKAIKAMAIKAI THOMPSON, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CASE NO. 1CPC-17-0000709)


SUMMARY DISPOSITION ORDER
(By: Ginoza, C.J., and Leonard and Wadsworth, JJ.)

On May 31, 2017, Plaintiff-Appellee State of Hawai'i (**State**) charged Defendant-Appellant Joshua Ikaikamaikai Thompson (**Thompson**), via indictment, with two counts of Negligent Homicide in the First Degree, in violation of Hawaii Revised Statutes (**HRS**) § 707-702.5(1)(a) (2014), and one count of Promoting a Detrimental Drug in the Third Degree, in violation of HRS § 712-1249 (2014).  The charges stemmed from a fatal motor vehicle collision on July 1, 2016, on Kamehameha Highway in the Waiāhole area.  Thompson's vehicle collided with a vehicle driven by Mark M. Matsushima (**Matsushima**).  Matsushima and his passenger, Sefilina M. Gray, died.

Following a jury trial, Thompson was convicted of two counts of Negligent Homicide in the Second Degree, in violation of HRS § 707-703(1)(a) (2014)[1] (**Counts One and Two**), and one

---

[1]     HRS § 707-703(1)(a) provides, in relevant part:

        (1) A person commits the offense of negligent homicide
     in the second degree if that person causes the death of:

(continued...)

count of Promoting a Detrimental Drug in the Third Degree (**Count Three**). Thompson was subsequently ordered to pay restitution as to Count 2 in the amount of $7,150.92.

Thompson appeals from the September 12, 2019 Judgment of Conviction and Sentence (**Judgment**) and the January 3, 2020 Free Standing Order of Restitution (**Order of Restitution**), entered in the Circuit Court of the First Circuit (**Circuit Court**).[2] On appeal, Thompson challenges his conviction on Counts One and Two, contending that: (1) the Circuit Court plainly erred in failing to instruct the jury on causation and intervening action in accordance with HRS §§ 702-214 and 702-216(2) (quoted infra); (2) the State engaged in multiple acts of prosecutorial misconduct that individually and collectively deprived Thompson of his right to a fair trial; and (3) defense counsel did not provide Thompson with effective assistance of counsel. Thompson does not challenge his conviction on Count Three.

After reviewing the record on appeal and the relevant legal authorities, and giving due consideration to the issues raised and the arguments advanced by the parties, we resolve Thompson's contentions as follows, and vacate (a) the Judgment as to Counts One and Two, and (b) the Order of Restitution.

(1) Thompson contends that the Circuit Court plainly erred in failing to instruct the jury in accordance with HRS §§ 702-214[3] and 702-216(2)[4] because, when read and considered as

---

[1] (...continued)
>     (a) Another person by the operation of a vehicle in a negligent manner[.]

[2] The Honorable Karen T. Nakasone presided.

[3] HRS § 702-214 (2014) provides: "Conduct is the cause of a result when it is an antecedent but for which the result in question would not have occurred."

[4] HRS § 702-216 (2014) provides, in relevant part:

>     In the following instances, recklessly or negligently causing a particular result shall be deemed to be established even though the actual result caused by the defendant may not have been within the risk of which the defendant was or, in the case of negligence, should have been aware:

(continued...)

2

a whole, the jury instructions given regarding Negligent Homicide in the Second Degree were prejudicially insufficient.

When jury instructions or their omission are at issue on appeal, "the standard of review is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading." Stanley v. State, 148 Hawaiʻi 489, 500, 479 P.3d 107, 118 (2021) (emphasis omitted); State v. Metcalfe, 129 Hawaiʻi 206, 222, 297 P.3d 1062, 1078 (2013).

> Erroneous instructions are presumptively harmful and are a ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudicial. Error is not to be viewed in isolation and considered purely in the abstract. It must be examined in the light of the entire proceedings and given the effect which the whole record shows it to be entitled. In that context, the real question becomes whether there is a reasonable possibility that error might have contributed to conviction. If there is such a reasonable possibility in a criminal case, then the error is not harmless beyond a reasonable doubt, and the judgment of conviction on which it may have been based must be set aside.

Stanley, 148 Hawaiʻi at 500-01, 479 P.3d at 118-19 (quoting State v. Loa, 83 Hawaiʻi 335, 350, 926 P.2d 1258, 1273 (1996)).

Here, Thompson failed to object to the alleged deficiency in the jury instructions at trial. However, "once instructional error is demonstrated, we will vacate, without regard to whether timely objection was made, if there is a reasonable possibility that the error contributed to the defendant's conviction[.]" State v. Nichols, 111 Hawaiʻi 327, 337, 141 P.3d 974, 984 (2006).

The Circuit Court instructed the jury on the elements of Negligent Homicide in the Second Degree as follows:

> A person commits the offense of Negligent Homicide in the Second Degree if he causes the death of another person by the operation of a vehicle in a

---

4/ (...continued)
. . . .

> (2)   The actual result involves the same kind of injury or harm as the probable result and is not too remote or accidental in its occurrence or too dependent on another's volitional conduct to have a bearing on the defendant's liability or on the gravity of the defendant's offense.

negligent manner.

There are three material elements of the offense of Negligent Homicide in the Second Degree, each of which the prosecution must prove beyond a reasonable doubt.

These three elements are:

1. That on or about July 1, 2016, in the City and County of Honolulu, the defendant caused the death of Mark M. Matsushima[ and Sefilina M. Gray]; and

2. That the defendant did so by operating a vehicle; and

3. That the defendant acted negligently as to each of the foregoing elements.

The jury instructions did not include the test for actual causation (*i.e.*, the "but for" test) under HRS § 702-214, or the standard for assessing the defendant's culpability under HRS § 702-216. See State v. Abella, 145 Hawaiʻi 541, 556-57, 454 P.3d 482, 497-98 (2019).

Thompson contends that the resulting instructions on Negligent Homicide in the Second Degree were prejudicially insufficient, because "the element of causation was critical to a determination of Thompson's liability[,]" and that issue was disputed at trial. In particular, Thompson argues that because there were no eyewitnesses to the collision, the parties relied on their respective expert witnesses, who disagreed regarding the cause of the collision.

"In a jury trial, it is the court's responsibility to ensure that the jury is properly instructed on the law and the questions the jury is to decide." Abella, 145 Hawaiʻi at 556, 454 P.3d at 497 (citing Nichols, 111 Hawaiʻi at 334-35, 141 P.3d at 981-82). The State must prove "[e]ach element of the offense" beyond a reasonable doubt. HRS § 701-114 (2014). Causation is an element of the offense of Negligent Homicide in the Second Degree, see HRS § 707-703(1), and a question of fact for the jury to decide. See Abella, 145 Hawaiʻi at 556, 454 P.3d at 497.

In this case, evidence was adduced at trial from which a jury could have concluded that Thompson's conduct was not the "but for" cause of the decedents' deaths. Evidence was also adduced of intervening events, from which a jury could have inferred that, even if Thompson's conduct actually caused the

4

deaths, his culpability was diminished. For example, Thompson's expert witness, Clyde Calhoun (**Calhoun**), opined "that the accident was caused by a vehicle, Mr. Matsushima's vehicle, crossing the centerline and colliding with [Thompson's] Toyota pickup truck." In contrast, the State's rebuttal expert witness, Anthony Racioppo, testified in relevant part as follows regarding his "ultimate conclusion of how this collision occurred":

> The Corvette [driven by Matsushima] was traveling southbound on Kamehameha Highway . . . . He was traveling, in my opinion, not [at] an excessive rate of speed, traveling in the appropriate lane. And the Toyota [driven by Thompson] was traveling northbound and coming out of a curve, driving fast and erratically.

> He came out and started entering a very tight radius curve. And because of the nature of the vehicle being jacked up and -- jacked up, with larger wheels and hitting a curve at approximately 50 miles an hour, the Toyota was, through centrifugal force, was forced outside into the southbound lanes in front of the path of the Corvette. As the vehicle approached the Corvette, the Corvette apparently tried to move out and somehow became out of his lane, I guess trying to avoid conflict, and the vehicles both hit each other.

Evidence was also adduced at trial of the following: toxicology tests on Matsushima following his death indicated "acute methamphetamine intoxication"; in the area of the collision, artificial light from streetlights was "going on and off" ("[o]ne may go out for a matter of a minute or so, and then light back up"); and, according to Calhoun, a post-collision photograph of the Corvette showed a closed headlight cover, indicating that the vehicle's headlights were not activated.

Moreover, during deliberations, the jury submitted the following question to the Circuit Court, titled "Communication No. 2 from the Jury": "Of the four material elements of the offense of negligent homicide, number 1) states that the defendant caused the deaths. If negligence is shared between the defendant and the deceased, does that mean that the defendant alone is guilty beyond a reasonable doubt?"[5/] (Emphasis in

---

[5/] The court responded to the jury communication as follows:

For Negligent Homicide in the First Degree, as defined on p. 23 and p. 29 of your jury instructions, element #4 is, "That the Defendant acted negligently as to each of the foregoing

(continued...)

original.)  This question appears to indicate that the jury was considering whether Matsushima's conduct affected the issue of causation and thus Thompson's liability for a negligent homicide offense.

In light of the evidence adduced at trial, the Circuit Court plainly erred in failing to instruct the jury as to the test for actual causation under HRS § 702-214, and the standard for assessing the defendant's culpability under HRS § 702-216(2). See Abella, 145 Hawaiʻi at 556-60, 454 P.3d at 497-501 (holding that the failure to instruct on intervening causation pursuant to HRS §§ 702-215 and 702-216 was plain error in a manslaughter prosecution); State v. Oania, No. CAAP-17-0000852, 2020 WL 930285, at *3 (Haw. App. Feb. 26, 2020) (SDO) (holding that the failure to instruct on "the critical issue of causation" was plain error in a prosecution for arson in the first degree).  We cannot say that the omission of these instructions was harmless beyond a reasonable doubt.  Because we conclude that the instructions given regarding causation were "prejudicially insufficient," we must vacate the Judgment as to Counts One and Two, vacate the Order of Restitution (which stemmed from the conviction on Count Two), and remand for a new trial on Counts One and Two.  See Abella, 145 Hawaiʻi at 561, 454 P.3d at 502 (quoting Nichols, 111 Hawaiʻi at 334, 141 P.3d at 981).

(2) Given our conclusion as to Thompson's first point of error, we do not reach Thompson's second and third points of error.[6]

---

[5] (...continued)
elements."  The definition of "negligently" is set forth on pg. 20, and you must apply this definition.

This definition of "negligently" also applies to all included offenses (i.e., Negligent Homicide in the Second Degree, Negligent Injury in the First Degree, Negligent Injury in the Second Degree), except for Negligent Homicide in the Third Degree, which requires "simple negligence."

[6]     In connection with his second point of error, Thompson summarily argues that prosecutorial misconduct requires "reversal of [Thompson's] conviction."  However, Thompson expressly states that he "is not appealing the Count 3 conviction."  In addition, the conclusion of Thompson's opening brief requests "remand for a new trial," i.e., Thompson does not seek to bar a new trial given his requested relief.  We have remanded for a new trial on Counts One and Two based on Thompson's first point of error.

**NOT FOR PUBLICATION IN WEST'S HAWAII REPORTS OR THE PACIFIC REPORTER**

For the reasons discussed above, we vacate the Circuit Court's:  (a) September 12, 2019 Judgment of Conviction and Sentence, only as to Counts One and Two, Negligent Homicide in the Second Degree; and (b) January 3, 2020 Free Standing Order of Restitution.  The case is remanded to the Circuit Court for a new trial on Counts One and Two and for further proceedings consistent with this summary disposition order.

DATED:  Honolulu, Hawaiʻi, February 25, 2022.


On the briefs:

William H. Jameson, Jr.,
Deputy Public Defender,
for Defendant-Appellant.

Stephen K. Tsushima,
Deputy Prosecuting Attorney,
City & County of Honolulu,
for Plaintiff-Appellee.

/s/ Lisa M. Ginoza
Chief Judge

/s/ Katherine G. Leonard
Associate Judge

/s/ Clyde J. Wadsworth
Associate Judge